UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES RAY CATHY,<br><br>        Plaintiff,<br><br>    vs.<br><br>B. HICKS, *et al*.,<br><br>        Defendants. | Case No. 1:17-cv-00624-EPG-PC<br><br>ORDER FINDING COGNIZABLE CLAIMS<br><br>ORDER FOR PLAINTIFF TO EITHER:<br><br>  (1) NOTIFY THE COURT THAT HE IS WILLING TO PROCEED ONLY ON THE CLAIMS FOUND COGNIZABLE BY THE COURT<br><br>OR<br><br>  (2) FILE AN AMENDED COMPLAINT<br><br>THIRTY-DAY DEADLINE |

**I.    BACKGROUND**

Charles Ray Cathy ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed a complaint on May 3, 2017, which is before this Court for screening.[1] (ECF No. 1)

\\\

---

[1] On May 22, 2017, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c) and no other parties have made an appearance. (ECF No. 4.) Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

1

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, Courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. *Id.* The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.*

## III. SUMMARY OF PLAINTIFF'S COMPLAINT

On March 17, 2016, Plaintiff was transferred from Salinas Valley State Prison ("SVSP") to Kern Valley State Prison ("KVSP"). Upon arrival at KVSP, Plaintiff had a disagreement with Defendant Officer Thompson over the number of property boxes permitted and asked to speak with a sergeant. Defendant Sergeant Salazar arrived an hour later. When Plaintiff complained that his rights were being violated with respect to his legal property, Sergeant Salazar responded, "I don't have time for this bullshit, I stand with my officers."

Plaintiff responded that he was "not accepting housing without my personal property and legal property." Plaintiff was moved to a temporary holding cell.

About an hour later, Sergeant Salazar, Officer Thompson, and Defendant Officer Northcutt came to Plaintiff's cell, placed him in handcuffs, and told him that he was being transferred to a program office to speak to a Lieutenant. Plaintiff claims that he was "detoured" to a housing unit where he was placed (still handcuffed) into "Cell 102" with another inmate "who immediately jumped up in a hostile manner, saying 'what's going on?'" Officer Northcutt then instructed "close 102." With officers observing through the cell window, the inmate and Plaintiff exchanged words and figured out that they were from rival gang affiliations. Plaintiff told the inmate that he did want any problems and told the officers that he was not surrendering the handcuffs until he spoke with a Lieutenant. Plaintiff and the inmate were then separated. Plaintiff alleges that officers did not follow prison procedures in placing him Cell 102. Instead, he claims that the officers intentionally set him up to be assaulted.

After radioing for more the assistance of more officers, Officer Northcutt ordered Plaintiff to step out of the cell and began escorting Plaintiff to the program office. During the escort, Defendant Sergeant Hicks arrived and shouted "Is this the bitch, Cathy?" Sergeant Hicks grabbed Plaintiff's right arm and taunted him, stating "I'll slap you, bitch." Sergeant Hicks then rammed Plaintiff into a gate post separating the yard from the program office. Plaintiff quickly moved his head to avoid the post, but his right shoulder slammed into the post. His right shoulder "went limp." After being rammed into the gate post, Officer Northcutt then rammed Plaintiff into the left corner of the door of the program office. Plaintiff doubled over in pain. Sergeant Hicks then straightened up Plaintiff, walked him to a cage, and rammed his head into the back of it.

While in the cage, Officer Bora approached, observed a lump on Plaintiff's head and asked him if he was alright. Plaintiff responded that he required medical attention after being assaulted by officers. Officer Bora called for medical attention and for the assistance of Lieutenant Stanley. Plaintiff complained to about the assault to Lieutenant Stanley, who then spoke to Officer Northcutt about the accusations. When Lieutenant Stanley told Plaintiff that

he was going to conduct a video interview of Plaintiff concerning the assault, Plaintiff refused because he had overheard him conspiring with Officer Northcutt about covering up the assault. Lieutenant Sandoval and Officer Bora began conducting the video interview, but Plaintiff requested that it be postponed due to throbbing pain in his head and shoulders.

Defendant Licensed Vocational Nurse ("LVN") Flores arrived to conduct a medical evaluation. LVN Flores documented Plaintiff's injuries in a "7219" medical report. However, Plaintiff alleges that she conspired with Sergeant Hicks to change information in the medical report, such as changing the lump on Plaintiff's head to a pimple. Plaintiff states that the medical report is now missing from his file.

Following the medical evaluation, Plaintiff claims that Sergeant Hicks falsified "Lock-Up Order 114", which falsely stated that Plaintiff "had expressed safety concerns to him" and resulted in him being placed in Administrative Segregation ("Ad-Seg"). On March 22, 2016, after spending five days in Ad-Seg, Plaintiff was informed that he was being released to "A-Yard."

On his transport to A-Yard, Plaintiff had a verbal disagreement with one of the escorting officers, Captain Marshal. Plaintiff then encountered Defendant Lieutenant Sotelo, who asked, "Did you file a use-of-force allegation on officers?" After Plaintiff responded that he had, Lieutenant Sotelo yelled, "You shouldn't have done that."

On March 25, 2016, Plaintiff was told that he was being escorted to the program office to get his property. Upon arrival, Plaintiff encountered multiple officers with gloves on. Defendant Officer Figueroa informed Plaintiff that he was being placed on "C status," and some of his personal property would need to be sent home. Plaintiff accused the officers of harassing him. Officer Figueroa responded, "I don't give a fuck." Lieutenant Sotelo called Plaintiff's name from behind and began choking Plaintiff, who began to black out. The altercation escalated when Officer Figueroa pepper sprayed Plaintiff and Defendant Officer Negrete jabbed his knee into Plaintiff's spine and pushed his face into the ground, causing Plaintiff's nose to start "pouring blood." Lieutenant Sotelo instructed the officers to stop. He then dragged Plaintiff by his shirt to a water faucet and put Plaintiff's head under the water.

Lieutenant Sotelo stood Plaintiff up, still dripping with pepper spray and water, and placed him in a cage. Plaintiff claims that prison staff did not follow protocol after he was sprayed with pepper spray and takes issue with the accuracy of the post-incident medical report.

### IV. EVALUATION OF PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.' " *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of

causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Eighth Amendment Claim

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006), *opinion amended on reh'g*, No. 04-35608, 2006 WL 3437344 (9th Cir. Nov. 30, 2006).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828–29, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). "First, there must be a demonstration that the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.2002)). "Second, a prisoner must demonstrate that the prison official "acted with deliberate indifference in doing so." Id.

"While *Estelle* establishes that deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835, 114 S. Ct. at 1978. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. 511 U.S. at 837, 114 S. Ct. at 1979.

"Incarceration itself renders prisoners dependent upon their keepers and 'strip [s] them of virtually every means of self-protection.'" *Morgan*, 465 F.3d at 1045 (quoting *Farmer*, 511

U.S. at 833, 114 S.Ct. 1970). "Thus, while conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" *Id*. (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). "In other words, they must not be devoid of legitimate penological purpose, *see Hudson v. Palmer*, 468 U.S. 517, 548, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), or contrary to 'evolving standards of decency that mark the progress of a maturing society.'" *Id*. (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982) (citing *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)).

Here, it is alleged that the defendants intentionally placed Plaintiff in Cell 102 with a rival gang member and peered through the window as the two began to argue. Thus, Plaintiff claims that the defendants intentionally subjected him to an excessive risk of serious harm. Construing these allegations in his favor at this stage, the Complaint states an inhumane conditions of confinement claim against Defendants Salazar, Thompson, and Northcutt.[2]

**B. Eighth Amendment Claim for Excessive Force**

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer*, 511 U.S. at 832-33 (quotations omitted). For claims of excessive physical

---

[2] It is noted that Plaintiff's alleged injury here is fear of assault by another inmate. The Court is aware of caselaw finding that fear of assault, alone, does not constitute a sufficiently serious constitutional injury. *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (providing that "[i]n a constitutional tort, as in any other, a plaintiff must allege that the defendant's actions caused him some injury" and citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). *See also Osborne v. Tulare Cty. Sheriff's Dep't*, No. CVF035423RECSMSP, 2006 WL 618366, at *3 (E.D. Cal. Mar. 9, 2006) (collecting cases for legal proposition that "fear of assault does not constitute a 'sufficiently serious' injury sufficient to state a claim under the Eighth Amendment"). However, the allegations here regarding Plaintiff's placement in Cell 102 for the purpose of assault by another inmate while constrained would be indicative of actions taken for very purpose of causing harm and are devoid of any legitimate penological purpose. The Court will, therefore, allow the cruel and unusual punishment claim to proceed past the pleading stage.

force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment, regardless of whether or not significant injury is evident. *Hudson*, 503 U.S. at 9-10; *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002).

Plaintiff's complaint states a claim for excessive force in violation of the Eighth Amendment as to Defendants Hicks, Northcutt, Sotelo, Figueroa and Negrete. Plaintiff's allegations, which must be taken as true at this stage, allege that those defendants violently assaulted him while he was restrained, without any legitimate security justification.

**C. Retaliation**

Allegations of retaliation against a prisoner for exercising his First Amendment rights may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). "A retaliation claim is not plausible if there are 'more likely explanations' for the action." *Holmberg v. Dept. of Corrs. of Wash.*, Case No. 3:15-cv-05374-RJB-JRC, 2016 WL 7383871, at *5 (W.D. Wash. Nov. 22, 2016), *citing Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

It is alleged that the defendants took adverse action against Plaintiff because he expressed his intention and desire to exercise his First Amend right to seek access to the legal system. Construing the Complaint liberally, Plaintiff's complaint states a claim for First Amendment retaliation as to Defendants Thompson, Salazar, Northcutt, Hicks, and Sotelo. *See Rhodes*, 408 F.3d at 567 (providing that prisoners have a First Amend right to file grievances, *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to pursue civil rights litigation in the courts, *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)).

\\\

**D. Due Process**

Although a person's rights are diminished when they are incarcerated, the due process clause of the Fourteenth Amendment still provides certain protections in the prison environment. *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S. Ct. 2963, 2974, 41 L. Ed. 2d 935 (1974). A disciplinary action taken against prisoner implicates due process when "the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (citing *Sandin v. Connor*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process.")).

In determining whether prison hardship imposed upon inmates in administrative segregation and protective custody are atypical and significant so as to trigger due process protections, the court relies on a "condition or combination of conditions or factors [that] requires case by case, fact by fact consideration." *Id*. (citing *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996)). The Court looks to "three guideposts by which to frame the inquiry: (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence." *Id*. (citing *Sandin*, 515 U.S. at 486–487, 115 S.Ct. 2293; *Keenan*, 83 F.3d at 1089).

Here, Plaintiff alleges that he was temporarily placed in Ad-Seg for a period of five days prior to being placed in the A-Yard. This temporary Ad-Seg placement does not implicate a protected liberty interest. *See, e.g., Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (holding that a convicted prisoner had no protected liberty interest in not being confined in prison's special housing unit (SHU) for period of 30 days pending disciplinary hearing, and therefore, prisoner was not entitled to hearing before being placed in such confinement, and his placement and retention in SHU were within range of confinement to be normally expected by

prison inmates in relation to ordinary incidents of prison life).  The complaint further lacks allegations as to whether the challenged condition mirrored those conditions imposed upon inmates or whether the defendants' actions will invariably affect the duration of his sentence.

In sum, Plaintiff's complaint does not state a due process claim against any defendant.[3]

## V. CONCLUSION AND ORDER

The Court has screened Plaintiff's Complaint and finds that it states cognizable claims against Plaintiff's complaint states claims for 1) violation of the Eighth Amendment against Defendants Salazar, Thompson, and Northcutt; 2) excessive force in violation of the Eighth Amendment as to Defendants Hicks, Northcutt, Sotelo, Figueroa and Negrete; and 3) retaliation in violation of the  First Amendment as to Defendants Thompson, Salazar, Northcutt, Hicks, and Sotelo.  However, the complaint states no other cognizable claims against any of the other defendants.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave to amend shall be freely given when justice so requires."  Accordingly, the Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above.  *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000).  Plaintiff is granted leave to file an amended complaint within thirty days if he chooses to do so.

The amended complaint must allege constitutional violations under the law as discussed above.  Specifically, Plaintiff must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights.  Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 678; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct.  *Iqbal*, 556

---

[3] Similarly, Plaintiff's allegations that the defendants made false statements or falsified records do not constitute a deprivation of a liberty interest. *Garrott v. Glebe*, 600 F. App'x 540, 542 (9th Cir. 2015) (questioning whether "it is clearly established federal law that a prisoner has a right to be free from false accusations.")  Nor do Plaintiff's allegations regarding quantity limitations placed on his personal or legal property state a constitutional claim. *See, e.g., Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (affirming dismissal of due process claim where prisoner "was deprived of property because he was reclassified to grade B, and in that classification, he was not eligible to possess the additional property").

U.S. at 676. Plaintiff must also demonstrate that each defendant *personally* participated in the deprivation of his rights by acting with deliberate indifference to Plaintiff's health or safety, which is sufficiently serious. *Jones*, 297 F.3d at 934 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Plaintiff may file a First Amended Complaint curing the deficiencies identified by the Court in this order if he believes additional true factual allegations would state any additional claims or claims against any additional defendants, within **thirty (30) days** from the date of service of this order;
3. If Plaintiff chooses to file an amended complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:17-cv-00624-EPG-PC; or
4. Plaintiff may instead notify the Court that he is willing to go forward with his complaint only on the claims allowed in this order, his claims for 1) violation of the Eighth Amendment against Defendants Salazar, Thompson, and Northcutt; 2) excessive force in violation of the Eighth Amendment as to Defendants Hicks, Northcutt, Sotelo, Figueroa and Negrete; and 3) retaliation in violation of

the First Amendment as to Defendants Thompson, Salazar, Northcutt, Hicks, and Sotelo.

4. If Plaintiff fails to file an amended complaint or notify the Court to go forward with the cognizable claims within 30 days, the Court may dismiss Plaintiff's case for failure to comply with a Court order.

IT IS SO ORDERED.

Dated: **July 31, 2017**

/s/ *Erica P. Grosjean*
UNITED STATES MAGISTRATE JUDGE